UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-02409-JLS-JDE Date: September 02, 2026
Title: James Quilici v. Tesla, Inc.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Kelly Davis | N/A |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING MOTION TO DISMISS (Doc. 30)**

Before the Court is a Motion to Dismiss filed by Defendant Tesla, Inc. (Mot., Doc. 30.) Plaintiff James Quilici opposed, and Defendant replied. (Opp., Doc. 35; Reply, Doc. 39.) The Court finds this matter appropriate for decision without oral argument, and the hearing set for September 4, 2026, at 10:30 a.m. is VACATED. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the following reasons, the Court DENIES Defendant's Motion.

## I. BACKGROUND

*Pro se* Plaintiff James Quilici is the author and copyright owner of a drone-captured video (the "Video"). (First Amended Complaint ("FAC") ¶¶ 7, 9–10, Doc. 23.) The Video was first published by Plaintiff on July 14, 2025. (*Id.* ¶ 8.) The following day, Sawyer Merritt uploaded the Video to the social media platform X, with the caption: "Tesla's new diner and Supercharger is going to be PACKED when it opens. . . . video via WC Drone Productions." (*Id.* ¶ 10; Ex. A to FAC.) Merritt's post was made without Plaintiff's authorization. (FAC ¶ 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-02409-JLS-JDE Date: September 02, 2026
Title: James Quilici v. Tesla, Inc.

On July 21, 2025, Elon Musk's X account, @elonmusk, reposted Merritt's post, including the Video. (*Id.* ¶¶ 14–15; Ex. A to FAC; Ex. B to FAC.) In the repost, Musk wrote: "If our retro-futuristic diner turns out well, which I think it will, @Tesla will establish these in major cities around the world, as well as at Supercharger sites on long distance routes." (Ex. B to FAC.) Musk is the Chief Executive Officer ("CEO") of Defendant Tesla, Inc. ("Tesla"). (FAC ¶¶ 21–22.) Musk "routinely communicates corporate product launches and expansion initiatives through [the @elonmusk account] in a manner integrated with [Tesla's] brand identity and official corporate messaging." (*Id.* ¶ 21.) Plaintiff alleges that Musk's repost "substantially expanded the audience for the Merritt post," leading to "downstream media pickup" of Merritt's original post, including Plaintiff's Video. (*Id.* ¶ 22.)

Plaintiff contacted Tesla on July 21, 2025, regarding the unauthorized use of the Video. (*Id.* ¶ 24.) Plaintiff further sent a letter to Tesla on November 21, 2025, providing notice of copyright infringement and requesting removal. (*Id.*) Plaintiff alleges that Tesla "continued to allow or benefit from public access to the [Video]" even after receiving Plaintiff's communications. (*Id.* ¶¶ 25–27.)

On March 6, 2026, Plaintiff filed the complaint in this action, bringing one claim for copyright infringement against Tesla in violation of 17 U.S.C. §§ 106, 501. (Compl., Doc. 1.) Plaintiff's complaint alleged that Tesla "reproduce[ed], distribut[ed], and publicly display[ed] the [Video] without authorization," which "constituted direct copyright infringement." (*Id.* ¶ 29.) Tesla filed a motion to dismiss the complaint. (Doc. 22.)

On May 27, 2026, Plaintiff filed a First Amended Complaint ("FAC"). (FAC.) Plaintiff's FAC also brings one claim for copyright infringement. (*Id.* at 7–8.) However, Plaintiff now alleges in his FAC that Tesla "is liable for secondary and contributory copyright infringement because at least one third party directly copied and posted the

[Video] without authorization," and Tesla "knowingly amplified, facilitated, ratified, or materially contributed to continued dissemination" of the infringing post. (*Id.* ¶ 30.)

Tesla now moves to dismiss the FAC for failure to state a claim.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

Plaintiff alleges copyright infringement by Tesla. As an initial matter, Tesla suggests "that the @elonmusk user account" is a "personal account," and that Musk's repost therefore does not show "corporate inducement of infringement." (Reply at 13.) Plaintiff, however, contends that Musk's conduct can be attributed to Tesla through "ordinary agency principles." (Opp. at 21.)

The Ninth Circuit has applied common law agency principles to copyright law. *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1053–54 (9th Cir. 2017);

*see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1038 (9th Cir. 2013) ("When dealing with corporate or entity defendants [in copyright law], the relevant intent must be that of the entity itself, as defined by traditional agency law principles"). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" *Mavrix*, 873 F.3d at 1054 (quoting Restatement (Third) Of Agency § 1.01, cmt. c (Am. Law Inst. 2006)). Authority can be actual authority or apparent authority. *Id.* "Actual authority arises through 'the principal's assent that the agent take action on the principal's behalf.'" *Id.* "The determination of whether a principal has actual authority, express or implied, is primarily one of fact." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 755 (9th Cir. 1969). Here, Plaintiff alleges that Musk, Tesla's CEO, routinely used his X account to communicate Tesla's official corporate messaging. (FAC ¶ 21.) Musk did so again in the instant case, tagging Tesla's account in the repost, and asserting that "@Tesla will establish [diners] in major cities around the world, as well as at Supercharger sites on long distance routes." (Ex. B to FAC.) Tesla did nothing to disassociate from the post. (FAC ¶ 20.) Such facts are sufficient at this stage to plausibly allege that Musk acted with actual authority on behalf of Tesla when he committed the allegedly infringing actions.

The Court next discusses whether the FAC plausibly alleges that Tesla, through its agent Musk, committed contributory copyright infringement.[1]

[1] In their briefs, the parties also discuss direct and vicarious copyright infringement. But the FAC does not explicitly bring a claim under either theory of infringement. As to direct infringement, FAC states: "To the extent discovery shows Defendant or its agents directly uploaded, reproduced, distributed, or displayed the [Video], Plaintiff also alleges direct infringement." (FAC ¶ 30.) Because Plaintiff's assertion of a direct infringement claim is contingent on facts that he does not allege, the Court interprets the FAC to be alleging only a claim for secondary infringement. As to vicarious liability, Plaintiff acknowledges in Opposition that, although his FAC alleges generally that Tesla is liable for "secondary" infringement,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-02409-JLS-JDE Date: September 02, 2026
Title: James Quilici v. Tesla, Inc.

### A. Contributory Copyright Infringement

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002). Plaintiff's allegations of third-party direct infringement are somewhat broad. (*See* FAC ¶ 30 (stating that "at least one third party directly copied and posted the [Video] without authorization").) The FAC does, however, contain a specific allegation about Sawyer Merritt's July 15, 2025 X post, in which Merritt "copied and uploaded" the Video onto X without Plaintiff's authorization. (*Id.* ¶ 10.) The Court thus considers whether Plaintiff has plausibly alleged Tesla's contributory infringement for its repost of Sawyer Merritt's initial X post.

To establish a claim for contributory copyright infringement, a plaintiff must show (1) direct infringement by a third party; (2) that the defendant knew or had reason to know of the third party's infringing activity; and (3) that the defendant induced, caused, or materially contributed to the infringing conduct. *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *Napster*, 239 F.3d at 1020.

Tesla argues that "the direct infringement was complete when Merritt allegedly posted the [Video]," and because "[t]he subsequent re-post occurred after the fact," Tesla "could not have caused or induced that infringement." (Mot. at 12.) But the fact that Musk's repost occurred one week after Merritt's allegedly infringing post does not bar Plaintiff's contributory infringement claim. In *Perfect 10, Inc. v. Amazon.com, Inc.*, the Ninth Circuit considered whether Google could be held liable for contributory infringement for displaying images from third-party websites in Google Image Search,

---

Plaintiff "does not assert a separate standalone claim for vicarious liability" and instead pleads "contributory-infringement" allegations. (*Id.*; Opp. at 25.)

where the images had originally been published by the third-party websites without authorization from the original copyright owner. 508 F.3d 1146, 1168–73 (9th Cir. 2007). The Ninth Circuit held that Google potentially materially contributed to infringing conduct because it "substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials," and reasoned, "[w]e cannot discount the effect of such a service on copyright owners[.]" *Id.* at 1172. The Ninth Circuit also discussed the material contribution standard in *Perfect 10, Inc. v. Visa International Service Ass'n*, 494 F.3d at 796–800. There, it confirmed that a defendant may materially contribute to infringement where it "assists in the distribution of infringing content to Internet users," "by making it fast and easy for third parties to locate and distribute infringing material." *Id.* at 797. Thus, even though Tesla's repost did not induce or cause Merritt's original infringement, Plaintiff may still bring a contributory copyright infringement claim if he shows that Tesla's repost materially contributed to the "reproduction, alteration, display, and distribution" of the Video by distributing Merritt's initial infringing post to a larger audience. *Id.* at 796.

The Supreme Court's recent decision in *Cox Communications, Inc. v. Sony Music Entertainment* does not compel a different result. 146 S. Ct. 959 (2026). *Cox* involved an internet service provider ("ISP") that provided Internet service to millions of subscribers, assigning each subscriber a unique Internet Protocol ("IP") address. *Id.* at 965. The ISP was notified of copyright infringement occurring at certain subscribers' IP addresses, but allegedly took limited steps to stop such infringement. *Id.* at 965–66. *Cox* articulated the relevant standard for contributory infringement for "[t]he provider of a service," like an ISP, stating that "[t]he intent required for contributory liability can be shown only if [1] the party induced the infringement," by "actively encourag[ing] infringement through specific acts," or [2] "the provided service is tailored to that infringement." *Id.* at 967. Tesla relies on the language in *Cox* to argue that because Tesla neither *induced* Merritt's original infringement, nor provided any service to

facilitate infringement, it cannot be liable for contributory copyright infringement. But as noted above, the emphasis on "inducement" in *Cox* was in the context of liability for "providing a service to the general public with knowledge that it will be used by some to infringe copyrights," not for reposting or amplifying existing infringing material. *Id.* at 964. Thus, although the majority in *Cox* focused on the inducement inquiry rather than the material contribution inquiry, *Cox* did not disturb the Ninth Circuit's conclusion that a defendant can be liable for contributory infringement for its distribution or amplification of existing infringing content.

Moreover, the Supreme Court's holding in *Cox*, that "mere knowledge that a service will be used to infringe is insufficient" to show contributory liability, and that "a failure to take affirmative steps to prevent infringement" is also insufficient, does not foreclose liability in this case. *Id.* at 968 (internal quotation marks and citation omitted). Here, Plaintiff does not allege that Tesla passively knew of a third party's impending infringement, but failed to take affirmative steps to prevent it. Rather, Plaintiff proceeds on the theory that Tesla acted affirmatively to amplify existing infringement by deliberately reposting it. Such a theory of contributory copyright infringement is viable under Ninth Circuit precedent and *Cox*.

The Court therefore turns to evaluate the sufficiency of Plaintiff's allegations. Here, the facts are sufficient to plausibly allege that (1) Merritt directly infringed on Plaintiff's copyright; and (2) Tesla acted affirmatively to materially contribute to the infringement, (3) with knowledge of the infringement. First, Plaintiff alleges, and Tesla does not dispute, that Sawyer Merritt's X post published Plaintiff's copyrighted Video without Plaintiff's authorization, which constituted direct copyright infringement. (FAC ¶ 10.) Furthermore, Tesla, through its CEO, affirmatively reposted the infringing post on X. (*Id.* ¶ 15; Ex. B to FAC.) Plaintiff alleges that the repost materially contributed to Merritt's direct infringement by "substantially expand[ing] the audience of the Merritt post and contribut[ing] to downstream media pickup." (FAC ¶ 23.)

Finally, as to Tesla's knowledge of Merritt's infringement, Plaintiff alleges that Merritt included in the caption of his original post: "video via WC Drone Productions," suggesting that Merritt had uploaded a third party's Video. (*Id.* ¶ 11.) Additionally, on the same day of Musk's repost, Plaintiff contacted Tesla regarding the unauthorized use of the Video. (*Id.* ¶ 24.) This is sufficient to give rise to the plausible inference that Tesla knew that Merritt published a third party's Video without authorization, and thus knew that Merritt's X post constituted copyright infringement. *Compare Bell v. Chicago Cubs Baseball Club, LLC*, 2020 WL 550605, at *2, *4 (N.D. Ill. Feb. 4, 2020) (dismissing a contributory copyright infringement claim arising out of the retweet because the original tweet "[did] not attribute the [copyrighted] passage to Plaintiff"). Accordingly, the Court concludes that Plaintiff has successfully alleged a claim for contributory copyright infringement for Tesla's repost of Merritt's X post.

**B. Willfulness**

Plaintiff alleges that Tesla's infringement was willful. Tesla argues that Plaintiff fails to sufficiently allege facts showing Tesla's willful infringement.

"A determination of willfulness requires an assessment of a defendant's state of mind." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (quoting *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016)). "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Friedman*, 833 F.3d at 1186 (quoting *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (additional citation omitted)). "Questions involving a person's state of mind . . . are generally factual issues[.]" *Id.* (quoting *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1139 (9th Cir. 2010)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-02409-JLS-JDE Date: September 02, 2026
Title: James Quilici v. Tesla, Inc.

As discussed above, Plaintiff has alleged facts that plausibly show that Tesla had actual knowledge of the underlying infringing post, yet still acted to amplify it by reposting it. At this stage, these allegations are sufficient to support a willful contributory copyright infringement claim. *See Louis Vuitton Malletier*, 658 F.3d at 944 (suggesting that willfulness, like contributory copyright infringement, can be based "on a finding of knowing contribution to direct infringement"). The Court therefore will not dismiss Plaintiff's willfulness allegations.

## IV. CONCLUSION

For the above reasons, Defendant's Motion is DENIED.

Initials of Deputy Clerk: kd